Pilar **BARBOSA** et al., Plaintiffs,

v.

Roberto **SANCHEZ VILELLA**, Governor
of the Commonwealth of Puerto Rico,
et al., Defendants.

Civ. A. No. 162–67.

United States District Court
D. Puerto Rico.

April 18, 1967.

Herbert O. Reid, Sr., Washington, D. C., Santos P. Amadeo, Arturo Ortiz Toro, San Juan, P. R., for plaintiffs.

Rafael Hernandez Colon, Atty. Gen., of the Commonwealth of Puerto Rico, and Rafael A. Rivera Cruz, Asst. Atty. Gen., for defendants.

## OPINION

CAFFREY *, District Judge.

This matter came on for hearing on the basis of plaintiffs' motion for the convening of a statutory three-judge court and upon the basis of defendants' motion to dismiss the complaint.

The following facts appear to be without substantial dispute: the Legislature of Puerto Rico enacted a law bearing the caption "An Act to Provide for the holding of a plebiscite on the Political Status of Puerto Rico; to provide the means therefor; to appropriate funds for such purposes; to define certain offenses in connection with the Plebiscite provided for; to fix the penalties appertaining to such offenses; to provide for the registration of voters; to amend Act No. 1 of October 5, 1965, entitled General Registration Act; and to repeal Act No. 95 of June 21, 1960." The Act provides that the voters on the Island may cast a vote for one of three different proposed forms of government for Puerto Rico, namely, Commonwealth status, American Statehood or Independence. The plebiscite is scheduled to be held on July 23, 1967. A majority vote on that date in favor of either American Statehood or Independence would authorize the Legislature of Puerto Rico to petition the Congress of the United States for permission to convert the legal status of Puerto Rico to either Statehood or Independence as endorsed by the popular vote. If the majority of the voters indicated that they favor Commonwealth status there presumably would follow a continuation and development of the presently existing Commonwealth status.

A Complaint for Declaratory Judgment and Injunctive Relief was filed March 20, 1967, together with an application for the convening of a three-judge district court and a motion for preliminary injunction.

On March 21, 1967 an Order was entered to Show Cause why a three-judge district court should not be convened and why a temporary restraining order should not be issued. A hearing on this Order was scheduled for April 10, on which date a Memorandum in opposition to the convening of the three-judge district court and a motion to dismiss was filed on behalf of the defendants. On motion of plaintiffs the hearing was adjourned to and held on April 14, 1967.

The fifteen individual plaintiffs describe themselves as citizens of the United States and as citizens, residents and qualified voters of the Commonwealth of Puerto Rico. The complaint further identifies them as "the plaintiffs and the class they represent through the State-

* Sitting by designation.

hood Republican Party." (Page 17 of the complaint)

The defendants include the Governor of the Commonwealth of Puerto Rico, the Secretary of Justice, the General Supervisor of Elections, the members of the Commonwealth Board of Elections and the members of the Plebiscitary Board, i. e., the public officials charged with carrying out the provisions of the Plebiscite Act.

Plaintiffs charge in the complaint that the Act of December 23, 1966 (hereinafter referred to as Act No. 1), as amended, should be ruled unconstitutional, null and void, on the grounds that Article I, Sections 1, 8(1), (3), 9(3), 10 (1), Article IV, Section 3(2), Article VI, Clause 2, and the First, Fifth, Ninth, Tenth, Fourteenth, Fifteenth and Nineteenth Amendments to the Constitution of the United States, and the Treaty of Paris of 1898 all would be violated by the enforcement, execution, and operation of Act No. 1.

█ It should be noted that the complaint as filed substantially fails to comply with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the effect that "a pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends * * * [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief * * *". The instant complaint is prolix, argumentative, contains evidentiary matter, is long on conclusions of law and short on allegations of fact.

█ Passing from form to substance, the multifarious allegations of the complaint, fired broadside like so much constitutional canister at Act No. 1, appear to be largely frivolous. None of them, evaluated in the context of the provisions of the Act, and analyzed more particularly in terms of what, if any, impact the holding of the plebiscite would have on the status of either the plaintiffs themselves or on the status of the amorphous class they purport to represent, is well founded enough to raise a substantial federal question of the type required to provide the basis for convening a three-judge district court. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

During the argument, counsel for plaintiffs conceded that it is doubtful that the results of the plebiscite would in fact be binding on the Puerto Rican Legislature. Counsel further indicated that even if the plebiscite be thought to be binding on the Legislature, it was still free to follow the mandate of the plebiscite on one day and then enact a repealing law the following day. Of far more fundamental importance on the issue of whether a substantial federal constitutional question is raised by this complaint is the concession that, regardless of the degree to which the plebiscite might bind the Puerto Rican Legislature, it concededly does not bind the Congress of the United States. As a corollary thereto, the legal status, rights or American citizenship of all the residents of Puerto Rico will remain unchanged despite the plebiscite.

█ Since no one's rights or status will be altered by the holding of the imminent plebiscite, this complaint presents no justiciable controversy cognizable by this court, much less a substantial Constitutional question cognizable by a three-judge district court.

█ The thrust of the complaint seems to be that plaintiffs in some undisclosed manner will be deprived of rights secured by the United States Constitution, treaties and laws. This simply is not and cannot be so. The holding of the plebiscite will in no way change the juridical or political status of the plaintiffs or anyone else in Puerto Rico. Prior to the alteration of the status or rights of any person in Puerto Rico whatever change is later voted by the Puerto Rican Legislature must also be concurred in by the Congress of the United States. Nothing in Act No. 1,

as amended purports to bind the Congress. The most that it purports to do is to afford a vehicle for the expression of the will of the People, which may or may not bind the Commonwealth Legislature. To the extent that the Act is unclear as to whether it actually binds the Legislature, a matter is presented for the Courts of the Commonwealth of Puerto Rico, a question which should not be determined in the first instance by a Federal District Court. Wackenhut Corporation v. Aponte, D.C.P.R., 266 F.Supp. 401, decided June 23, 1966; affirmed U. S. Supreme Court March 13, 1967. 386 U.S. 268, 87 S.Ct. 1017, 18 L.Ed.2d 37. The State Courts as well as the Federal Court in Puerto Rico are charged with the observance, enforcement and protection of constitutionally guaranteed federal rights and, where a question raised hinges on an interpretation of State legislation "a due regard for the status of that Commonwealth under its compact with the Congress of the United States dictates we believe, that it should have primary opportunity through its courts to determine the intended scope of its own legislation and to pass upon the validity of that legislation under its own constitution as well as under the Constitution of the United States." *Wackenhut Corp.*, supra.

■ To the extent that plaintiffs are complaining that they have been denied the right to receive public funds in order to propagandize their particular point of view during the plebiscitory campaign, it is clear from the complaint and the oral argument that plaintiffs deliberately and knowingly waived this right by their refusal to apply for funds within the period prescribed in the Act. It is most unpersuasive for plaintiffs in a suit in equity to admit that they have waived their right to apply for and receive public funds because of their disapproval of the statute and then to argue that the statute is defective because it does not give them funds.

■ Plaintiffs cannot successfully argue nor have they shown that they are presently threatened with or have already suffered any irreparable damage or injury because of Act No. 1. Benoit v. Gardner, 345 F.2d 792, C.A.1 1965, Id. 351 F.2d 846. A purely hypothetical threat to federally protected rights does not afford a basis for injunctive relief nor does it raise before the court a justiciable controversy. United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 90, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

The motion to convene a three-judge district court, and the motion for a preliminary injunction are denied and the motion to dismiss the complaint is allowed.