Carlos M. HERNANDEZ–LOPEZ, individually and as President of the Frente Autonomista Mayaguezano and Frente Autonomista Mayaguezano, Plaintiffs,

v.

Juan R. MELECIO, individually and as President of State Board of Elections of the Commonwealth of Puerto Rico, Defendant.

No. CIV. 98–2031 CCC.

United States District Court, D. Puerto Rico.

Nov. 13, 1998.

Carlos M. Hernandez–Lopez, pro se.

Mario Pabón–Rosario, for Plaintiffs.

Ramón L. Walker, San Juan, PR, Pedro A. Delgado-Hernandez, for Defendant.

**ORDER**

CEREZO, Chief Judge.

This is an action filed under 42 U.S.C. § 1983 by the Frente Autonomista Maya-guezano (F.A.M.) and its president, attorney Carlos López–Hernández, raising a constitutional challenge to Law No. 249 of August 17, 1998, the Plebiscite Law, based on alleged violations of the First Amendment freedoms of speech and association.

Plaintiffs' first cause of action is entirely based on the contention that the law's requirement that for a group, organization or entity to participate as an official representative of one of the four status formulas or options defined in the ballot petition it must possess juridical personality is equivalent to an incorporation requirement. Complaint, docket entry 1, p. 8, Subtitle IV; Opposition to Motion to Dismiss (docket entry 12, pp. 7–11). F.A.M. claims that it was denied certification because it is not incorporated. It contends that this imposes a significant burden upon groups or organizations, especially small ones like F.A.M., for it impinges on and diminishes their political speech.

Plaintiffs next claim that the history of advocacy requirement established by the law is "vague and subjective" for "neither the law nor the regulations contain any standards against which evidence submitted by the groups would be measured." It also maintains that the prior advocacy requirement serves no purpose, as applied to plaintiffs, since the free association option which F.A.M seeks to represent was "first recognized as a valid electoral alternative by the Legislature at the time of the approval of this law."

The third violation of the First Amendment raised is that Article 10 of the law precludes participation by groups as status representatives, if the particular option is already represented by a political party. Plaintiffs contend that the First Amendment and the Equal Protection Clause prohibit a State from granting a monopoly on political participation to political parties. As a corollary to this, they state, at paragraph 50 of their last cause of action:

By allowing established political parties the full allotment of funding available for the defense of their given option, and potentially splintering among the non-party groups such as F.A.M. and PROE-LA the funding available to the defense of the status alternative discarded by the political parties, the Plebiscite Law is biased against the formation and dissemination of Ideas by new political entities aspiring to enter the public debate and engage in representative partic-

ipation concerning the future of Puerto Rico.

Complaint (**docket entry** 1), p. 22.

On October 15, 1998 defendant filed a Motion to Dismiss and Memorandum of Law in Support thereof (**docket entry 10**). Defendant first argues that plaintiffs failed to join indispensable parties: the Governor, the political parties and their respective electoral commissioners. With regard to the constitutional challenges, defendant argues that Law 249 does not violate the First Amendment in that Puerto Rico may validly compel groups to be collectively organized in order to participate as entities officially representing one of the formulas and that they have a prior history of advocacy, thereby ensuring their trustworthiness as a representative. On the equal protection claim, defendant asserts that the priority granted political parties over organizations as representatives of a status option does not run afoul of the First Amendment and that no funding disparity exists.

After the filing of a dismissal motion (**docket entry 10**), an opposition thereto (**docket entry 12**) and replies (**docket entries 15 and 18**), as well as a stipulation of facts (**docket entry 14**), the matter was taken under advisement. On November 4, 1998, the Court summoned Mr. Ramón M. Jiménez–Fuentes, Secretary of the Commonwealth Election Commission (Commission), to testify. His testimony was limited to his September 3, 1998 response to plaintiffs' application to be certified as a representative of the free association option.

Having considered the parties' respective positions, the stipulated facts and the Jiménez–Fuentes' testimony, the Court rejects the constitutional attacks to the specific provisions of the Plebiscite Law identified by plaintiffs, and, therefore, DENIES the injunctive relief requested.

This case involves issues concerning political speech raised by an organization which seeks to participate in the referen-

dum scheduled for December 13, 1998. The purpose of the legislation as stated in its title, is "to instrument the right protected by the First Amendment of the Constitution of the United States to petition Congress, by means of a plebiscite, on the extent of the sovereignty of the United States over Puerto Rico and the political condition of the citizens who reside in the Island." The law regulates the access of political parties as well as organizations and groups as representatives of the different status options and the funding available to those who qualify. Although in a different factual content, as in *Meyer v. Grant,* 486 U.S. 414, 108 S.Ct. 1886, 1892, n. 4, 100 L.Ed.2d 425 (1988), the activity generated by this law is "one example of advocacy of political reform" including debate on public issues. Those entities which are certified as representatives will engage intensely in interactive communication with the public in order to arouse interest in the referendum itself and to persuade voters that their particular option is deserving of their support.

Although political expression lies within the core of First Amendment values, it is "subject to regulation provided the State can show a substantial interest in such regulation." Rotunda & Novak, *Treatise on Constitutional Law: Substance and Procedure 2d,* 20.50 (1992). Notwithstanding that campaign or elections regulations have an impact and impose some burden on participants, the Supreme Court has ruled that "common sense, as well as constitutional law compels the conclusion that government must play an active role in structuring elections," *Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992), and that "as a practical matter there must be a substantial regulation of elections if they are going to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974).

Consequently, a Court confronted with a constitutional challenge to provisions of an electoral law must engage in a balancing of interests to determine whether constitutionally protected rights have been unnecessary restricted or abridged. The standard for the Court's review is set forth in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983), where courts were advised that constitutional challenges are to be resolved "by an analytical process that parallels [their] work in ordinary litigation." The steps of the evaluation process described in *Anderson* require the Court to "first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" and "it then must Identify and evaluate the precise interests put forward by the State as justification for the burdens imposed by its rule." In this balancing process, "the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights."

Plaintiffs, who seek to act as certified advocates of the free association formula in the plebiscite, claim that the provisions of the Plebiscite Law requiring a history of prior advocacy of the ideological status formula and the existence of juridical personality impermissibly burden their political association as well as their political expression.

Article 10 of the Law provides that "any group, organization or entity can request that it be certified to officially represent any option that is not represented by a political party." Pursuant to Articlè 10(1), in order to be certified the group, organization or entity must possess juridical personality at the moment that the law was approved and must have a recognized and public history of defense of the option involved.

In *Federal Election Com'n. v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 107 S.Ct. 616, 626–627, 93 L.Ed.2d 539 (1986), the Court recognized that statutory requirements may be so burdensome and so stringent that, in practical operation, they result in the imposition of administrative costs and restrictions "that many small entities may be unable to bear." They can serve as a disincentive to groups who which to engage in political activity for they can "require a far more complex and formallzed organization than many small groups could manage," discouraging protected speech by converting it "into a severely demanding task."

The two requirements challenged by plaintiffs are minimal burdens that are reasonable in that they ensure the effectiveness of the entities certified as advocates of a given formula. We first address the "juridical personality" requirement which plaintiffs erroneously equate with incorporation.

■ Juridical personality can take diverse forms, one of which is incorporation. Plaintiffs' contention that its petition for certification as a representative was rejected because it is not an incorporated entity is based on the text of the letter of September 3, 1998 and on its interpretation of the legislative history of the statute, which reflects that, as originally drafted, its Article 10(1) provided for certification if the group, organization or entity existed at the time of the approval of the law, but was changed to require not mere existence but juridical personality. They also contend that the signature requirement should make unnecessary a showing of juridical personality. The sufficiency of the signature requirement is also opposed against the prior history of advocacy requirement.

The only injury to their First Amendment rights that plaintiffs claim they would suffer as a result of the juridical personality factor stems from the need to comply with the multiple formal requirements of the law of corporations, such as, registration of a certificate of incorporation, a resident agent, dispositions regu-

lating the issuance of shares and the rights of shareholders, personal liability of the directors and shareholders arising from their fiduciary duties, maintaining a principal place of business or a designated office in the Commonwealth of Puerto Rico, maintaining accounting books, records of inventory and files in the manner described by the law, holding regular meetings, and submitting detailed annual reports in the manner prescribed by section 3251 of Title 14 of the Laws of Puerto Rico, subject to administrative penalties for failure to do so.

Although the Plebiscite Law nowhere limits juridical personality to incorporation, if in its application defendant actually required plaintiffs to be incorporated in order to meet the threshold requirement of juridical personality, there would be a legitimate concern that plaintiffs' political activity and speech could be unduly restricted without justification by the State. The disincentives to small groups to participate in political expression by superimposing the requirements amassed by the corporation law would, like in *Federal Election Com'n. v. Massachusetts Citizens for Life, Inc., supra,* constitute an injury to plaintiff's First Amendment rights. Such is not the situation confronted by F.A.M. and its president. Our review of their September 2, 1998 letters to the Commission for certification as a representative of the free association formula reflects that besides stating their intention to advocate for that formula during the plebiscite, they gave little information as to what the organization stands for. A much discussed portion of the first of their two letters states that F.A.M. " . . . is an unincorporated entity recently organized...." The Secretary of the Commission replied in his September 3, 1998 letter that it could be drawn from plaintiffs' letter that the organization lacked the juridical personality required by the enabling law of the plebiscite. Plaintiffs interpret this to necessarily mean that juridical personality is equivalent to incorporation.

Given the parties' conflicting interpretations of the text of these letters, the Court summoned the Secretary of the Commission to testify on the matter. A hearing was held on November 5, 1998 for the sole purpose of supplementing the written stipulations of fact with his testimony. He identified the portion of plaintiffs' first September 2, 1998 letter which read that the F.A.M. "is an unincorporated entity recently organized" as allowing him to infer the absence of juridical personality required by the law. The witness specifically testified that F.A.M.'s application was disallowed because "the letter itself purported [sic] that they did not have incorporation or any other kind of juridical personality, and for that reason they didn't qualify." Tr. of November 5, 1998 hearing, p. 16, lines 23 through page 17, line 1. Asked by the Court what he meant by any other kind of juridical personality, the witness described: "They didn't show that they had a group with people, with names. They just sent a very brief letter reporting that they had that intention, and that was all." Tr. of November 5, 1998 hearing, p. 17, lines 4–7.

Mr. Jiménez–Fuentes repeatedly stated that plaintiffs could have made a showing of juridical personality by presenting a list of names and addresses of people who had formed a group with the specific intention of advocating for a status formula and the bylaws of the organization if they were not registered as a corporation.

Article 10(3) of the Plebiscite Law and Section 2.1(3) of the Regulation for Certification of Groups, Organizations or Entitles for their participation in the plebiscite which was in effect at the time that plaintiffs filed their petition provide that the central governing board ("Comité Directivo") of the group shall notify the Commission in writing the names and addresses of its members. Plaintiffs provided no evidence that they had juridical personality by submitting the names and addresses of the members of F.A.M.'s governing board or by presenting a copy of its bylaws. As

a matter of fact their petition letter is bereft of any information relevant to its juridical personality. Having failed to do so, they now claim that F.A.M.'s petition was denied because it was not incorporated. They would have this Court conclude that the only reason for the Secretary's determination that it lacked juridical personality was its status as a non-corporate entity. Missing in that argument is their disregard for the insufficiency of the information provided by them which would have allowed the Secretary to consider other forms of juridical personality besides incorporation.

The argument that the change of the word "exist" in the original draft of the law to the requirement of juridical personality of organizations and groups is clear evidence that incorporation is required is conclusory. Incorporation is a specific form of juridical personality, but not the exclusive one. Plaintiffs seek now to distract attention from their failure to provide any information in support of juridical personality through their interpretation that only incorporation would persuade defendant of their compliance with that requirement.

Other than equating juridical personality with incorporation, plaintiffs raise no valid argument against it. Their entire argument, centered on the burdens and restrictions placed on small organizations such as F.A.M. is defeated by the fact that neither the law nor the Secretary in its implementation mandated that F.A.M. be incorporated as a pre-requisite for its certification. Submitting lists of names and addresses of its governing board and a copy of its by-laws would have sufficed for a non-incorporated entity to show juridical personality. This is a minimal burden which, contrary to the stiff requirements that Massachusetts Citizens for Life, Inc. confronted, cannot be said to have the practical effect to discourage plaintiffs' protected speech and right to associate for political activity. Those organizations which are certified as representatives are entitled to public funding. The juridical personality requirement

guarantees, at least, that advocates have a basic organizational structure in order to effectively convey the message behind a particular status option.

■ Plaintiffs' challenge to the prior history of advocacy requirement on First Amendment grounds focused on its alleged vagueness since "the law does not define what is meant by long or publicly recognized history." Plaintiffs' Opposition to Motion to Dismiss, p. 13 (**docket entry 12**). Plaintiffs sense a danger in what they describe as "uncharted waters" for "neither the law nor the regulation contain any standards against which any evidence submitted by the group would be measured." *Id.*, p. 13. Finally, they contend that this requirement "is particularly egregious with respect to the plaintiffs in this action, given the fact that the status alternative they seek to represent was recognized by the Legislature as a valid electoral option for the first time only less than two months ago." Complaint, ¶ 39, pp. 17–18 (**docket entry 1**).

Article 10(1) of the law requires that the group, organization or entity "possess a. public and recognized history of defense of the option involved." Nowhere does the law state that it be lengthy, as claimed by plaintiffs. The vagueness argument falls in light of the plain meaning of the words "public" and "recognized" used in the law. If the prior advocacy of a particular group has public recognition, as required by the law, no standards are needed to compare its advocacy against that of other groups.

It is not unreasonable for the Commonwealth, which is funding the certified organization's political activity, to require that it have previously been a standard bearer of the political ideology it seeks to represent. The public recognition factor demonstrates a commitment to a formula and serves to foster trust from the voters whose support they seek.

The "new formula" argument is defeated by plaintiff Hernández' admission that in his individual capacity he has been a long

standing advocate of free association. The fact that this political theory has been embraced within the ranks of the Popular Democratic Party, as claimed by plaintiffs, did not preclude others from advocating on its behalf. Neither did it require recognition by the Legislature for others to defend it before that.

■ Plaintiffs' third cause of action charges that the Plebiscite Law excluded them from participating in the process if a political party has previously informed the Commission of their intention to represent the same option. Plaintiffs do not claim that any political party is representing the free association formula that they seek to defend. Only organizations, groups or entities such as them have notified their intention to do so. The political parties had four days after the Commission published the announcement of the holding of the plebiscite to notify in writing their intention to represent one of the options. As a matter of law, no political party could do so at this late date. Plaintiffs do not have a personal stake in a determination of the constitutional validity of the statutes provisions granting political parties' first refusal. Accordingly, since they are not competing with any political party to defend the free association option, there is no case or controversy to adjudicate as to this particular cause of action. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 (1976).

■ The fourth and final cause of action is based on the claim that Article 30(b) of the law is biased in favor of political parties in the distribution of electoral funds for they receive the full allotment of funding available for the defense of a given option while non-party groups such as plaintiffs are subject to potential splintering of the funding available for those status options discarded by the political parties. Defendant responded by pointing to Section 6.1 of the Commission Regulation approved on August 24, 1998, as amended, which provides that the Commission will certify the first group, organization or entity which complies with the requirements established by the law and the regulations.

The Court notes that nowhere in the law is certification as a representative of one of the status formulas limited to the first organization that fulfills its requirements. Article 10 of the law provides that **any** group, organization or entity can petition to be certified to represent an option which is not represented by a political party. It then sets forth the requirements that the group, organization or entity must comply with to obtain certification by the Commission. The specific requirements are: juridical personality, prior public and recognized history of advocacy, that its central governing board has agreed to defend the option chosen and has notified the Commission in writing the names and addresses of its members, and a signature requirement to demonstrate the minimum popular support required in the law. There is no mention that only one of several organizations seeking certification will obtain it. In that sense, the regulation contravenes the provisions of the Plebiscite Law which is controlling.

Each **formula** is allotted the same amount of money under the statute. Therefore, there is no element of discrimination as to their funding. Each formula is defined in the law. If several groups concur to defend a particular option, the monies allotted are distributed evenly among the different advocates. There has been no showing that the law discriminates in the distribution of funds among the different formulas. When several groups are certified as advocates of one same formula, the funds provided to that formula are divided among the different messengers who convey one same message: the superiority of that particular ideological stance.

For the reasons stated, the complaint is DISMISSED, since the specific statutory provisions challenged all pass constitutional muster and plaintiffs have not shown

any violation to their First Amendment freedoms of speech and association.

SO ORDERED.

### JUDGMENT

For the reasons stated in our Order of this same date, the Motion to Dismiss (**docket entry 10**) is GRANTED and the complaint is DISMISSED, since the specific statutory provisions challenged all pass constitutional muster and plaintiffs have not shown any violation to their First Amendment freedoms of speech and association.

SO ORDERED AND ADJUDGED.