Nicolas **NOGUERAS CARTAGENA,**
Plaintiff,

v.

Governor Sila **MARÍA CALDERÓN,**
et al Defendants.

**No. CIV 01–1789 HL.**

United States District Court,
D. Puerto Rico.

June 28, 2001.

---

Nicolas Nogueras–Cartagena, San Juan, PR, Pro se.

Salvador J. Antonetti–Stutts, Director, Carlos Del–Valle–Cruz, Department of Justice of P.R., Federal Litigation Division, San Juan, PR, for Sila Marie Calderon.

Camille L. Velez–Rive, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, for George W. Bush.

Ramon L. Walker–Merino, San Juan, PR, for Juan R. Melecio.

Johanna M. Emmanuelli–Huertas, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Carlos Lopez–Feliciano.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is Plaintiff's motion for an injunction. He challenges the constitutionality of two referenda scheduled to be held regarding the United States Navy's exercises in Vieques. One referendum ("federal referendum") was authorized by Congress and is scheduled to be held this November.[1] The second referendum ("local referendum") was authorized by the Puerto Rico legislature and is scheduled for this July 29.[2] It is this local referendum which is the subject of the present opinion and order.[3] In response to Plaintiff's motion, the Court ordered the Puerto Rico Government Defendants to show cause at a hearing why a preliminary injunction should not be issued. Plaintiff had moved to have the hearing on the preliminary injunction consolidated with his request for a permanent one. At the hearing, Defendants consented to Plaintiff's motion for a consolidation. Thus, the present order is a resolution of the merits of Plaintiff's claims regarding the local referendum.

Plaintiff's claims regarding the local referendum are the following: that Law 34, the law enacting the referendum, violates the First Amendment right of free expression, right to petition the government, and right to assembly; that it violates his rights to due process and equal protection; that it is a violation of federal law and public policy; and that it includes ballot

---

1. Pub.L. No. 106–398, 114 Stat. 1654, October 30, 2000.

2. Law No. 34, June 13, 2001.

3. The United States District Court of Puerto Rico has been the site of numerous electoral battles. *See Hernández López v. Melecio,* 38 F.Supp.2d 70 (D.P.R.1998); *Olguin Arroyo v. State Election Bd.,* 30 F.Supp.2d 183 (D.P.R. 1998); *Popular Democratic Party v. Commonwealth of Puerto Rico,* 24 F.Supp.2d 184 (D.P.R.1998); *Nogueras–Cartagena v. Rosselló–González,* 182 F.R.D. 380 (D.P.R.1998); *New Progressive Party v. Hernández Colón,* 779 F.Supp. 646 (D.P.R.1991); *Granados Navedo v. Acevedo,* 752 F.Supp. 523 (D.P.R.1990); *Torres Torres v. Comisión Estatal de Elecciones,* 700 F.Supp. 613 (D.P.R.1988); *Partido Nuevo Progresista v. Hernández Colón,* 415 F.Supp. 475 (D.P.R.1976); *Barbosa v. Sánchez Vilella,* 293 F.Supp. 831 (D.P.R.1967).

The federal court's involvement in Puerto Rico elections is not a new phenomenon. The first general election held here following the change of sovereignty in 1898 was held in 1899 to elect municipal officials. The election was supervised by the United States Provisional Court, the first federal court established in Puerto Rico. *See* Antonio Quiñones Calderón, *Trayectoria Política de Puerto Rico,* at 20–21 (1988).

options which are outside the scope of Puerto Rico's powers vis-à-vis the United States.

■ For a court to issue a permanent injunction, it must first find that (1) the plaintiff has prevailed on the merits; (2) he will suffer irreparable harm if injunctive relief is not granted; (3) the harm to plaintiff outweighs any harm to the defendant which would be caused by issuing an injunction; (4) granting the injunction will not adversely affect the public interest. *Metro–Goldwyn Mayer, Inc., v. 007 Safety Products, Inc.,* 183 F.3d 10, 15 n. 2 (1st Cir.1999); *A.W. Chesterton Co. v. Chesterton,* 128 F.3d 1, 5 (1st Cir.1997). In the present case, the Court focuses on whether Plaintiff has satisfied a showing of success on the merits.

### 1. Equal protection claim

■ The Court first considers Plaintiff's claim of an equal protection violation. This claim is based on the fact that Law 34 provides that only voters registered to vote in Vieques will be allowed to participate.[4] Because Plaintiff is not a resident of Vieques, he will not be allowed to vote in the referendum. Citizens generally do not have the constitutional right to vote in the elections of a governmental division of which they are not residents. *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 68–69, 99 S.Ct. 383, 389, 58 L.Ed.2d 292 (1978); *Mixon v. Ohio,* 193 F.3d 389, 405 (6th Cir.1999). This is true even though the outcome of the elections could affect those individuals living outside of the division's borders. *Holt Civic Club,* 439 U.S. at 69, 99 S.Ct. at 389. A court should analyze a residency requirement to determine if it bears a rational relationship to a legitimate state purpose. *Id.* at 70, 99

S.Ct. at 390; *Mixon,* 193 F.3d at 405; *Hawkins v. Johanns,* 88 F.Supp.2d 1027, 1043 (D.Neb.2000).

■ In the present case, Law 34 easily meets this relaxed standard of review. Article 1 of the law indicates that the referendum is intended to allow Vieques' residents to express their feelings on whether the United States Navy should continue to conduct exercises on that island. A special interest election may be limited to those individuals with that special interest. *Holt Civic Club,* 439 U.S. at 69, 99 S.Ct. at 389; *Duncan v. Coffee County, Tenn.,* 69 F.3d 88, 92 (6th Cir. 1995). The Court need not belabor the obvious: a referendum intended to determine the sentiment of a defined populace should naturally be limited to the residents of that populace. Plaintiff does not have a right to vote in the referendum.

### 2. Due process claim

Plaintiff also claims that Law 34 violates the due process clause. The precise nature of this claim is not clear. In his complaint Plaintiff makes two due process allegations. In the first one, he alleges that the "local referendum reaches the point of patent and fundamental unfairness, and therefore a violation of due process exists."[5] The Court presumes that this is a reference to his claims that the language of the ballot is vague, confusing, and biased against the Navy. Plaintiff's second allegation is that allowing part of the affected population to vote on an issue regarding the state's police power is unconstitutional under the due process clause.[6] This second allegation appears to be a complaint directed solely at his federal referendum claims, that is, that Congress and the President have delegated a question re-

---

4. Law No. 34, art. 8.

5. Docket no. 1, ¶ 60.

6. Docket no. 1, ¶ 64.

garding national security to the people of Vieques. Alternatively, this second allegation could be a complaint that he has been deprived of his right to vote in the local referendum. If so, for the reasons explained in part 1. above, he does not have such a right.

There remains, then, his first due process allegation that the local referendum is patently and fundamentally unfair. The Due Process Clause has two components: a procedural one and a substantive one. *Hasenfus v. LaJeunesse,* 175 F.3d 68, 70–71 (1st Cir.1999). Procedural due process rights are invoked in the context of a state's deprivation of life, liberty, or property. *Fournier v. Reardon,* 160 F.3d 754, 757 (1st Cir.1998). Plaintiff makes no such allegation. Thus, the Court considers this to be a claim for a substantive due process violation. Substantive due process protects an individual from "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986); *Souza v. Pina,* 53 F.3d 423, 425 (1st Cir.1995). A substantive due process claim may proceed under one of two theories. *Aversa v. United States,* 99 F.3d 1200, 1215 (1st Cir.1996); *Brown v. Hot, Sexy and Safer Productions, Inc.,* 68 F.3d 525, 531 (1st Cir.1995). One, the state actor's conduct must shock the conscience, *see County of Sacramento v. Lewis,* 523 U.S. 833, 845–54, 118 S.Ct. 1708, 1716–20, 140 L.Ed.2d 1043 (1998); *Hasenfus,* 175 F.3d at 72. Or two, the state actor must have interfered with certain fundamental rights or with liberty or property interests protected by the due process clause, *see Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000); *Fournier,* 160 F.3d at 758; *Aversa,* 99 F.3d at 1215.

Before considering the merits of this claim, the Court must first determine whether Plaintiff has standing to bring it. *See Berner v. Delahanty, II,* 129 F.3d 20, 23 (1st Cir.1997). Standing is a threshold issue which goes to a federal court's power to hear a claim. *Id.* If the plaintiff lacks standing, then the court lacks jurisdiction to hear the matter. *New Hampshire Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 12 (1st Cir.1996). In order to establish standing, a plaintiff must show that (1) he has suffered or is in danger of suffering a concrete injury that is particularized to him; (2) the injury is reasonably traceable to the defendant's allegedly illegal conduct; and (3) a favorable decision will likely redress the injury. *Becker v. Fed. Election Comm'n,* 230 F.3d 381, 385 (1st Cir.2000). The plaintiff has the burden of making this showing. *Dubois v. United States Dep't of Agriculture,* 102 F.3d 1273, 1281 (1st Cir.1996).

A generalized grievance challenging allegedly illegal government conduct will not be sufficient to establish standing. *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995). A claimed injury which is "shared in substantially equal measure by all or a large class of citizens," does not justify the exercise of the court's jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). If plaintiff's interest is shared generally with the public as a whole, he lacks standing. *Fed. Election Comm'n v. Akins,* 524 U.S. 11, 23, 118 S.Ct. 1777, 1785, 141 L.Ed.2d 10 (1998): *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64, 117 S.Ct. 1055, 1067, 137 L.Ed.2d 170 (1997). A plaintiff will have standing for a generalized harm if he can point to the violation of a specific right such as a denial of his right to freedom of speech; if, however, he claims only an interest in having the government follow the law, he will not have standing. Erwin Chemerinsky, *Federal Jurisdiction* § 2.3.5, at 90 (3d ed.1999); *see also Becker,* 230 F.3d at 390.

In the present case, Plaintiff's substantive due process claim is not one for the violation of a right specific to him. Rather, it is a generalized grievance regarding what he perceives to be unfairness in the way the ballot is worded. Plaintiff is claiming that the ballot is slanted so that the position favoring the cessation of Navy activities in Vieques will win the referendum. This is not the sort of particularized burden that gives rise to standing. *See Becker,* 230 F.3d at 390. It is an abstract question, best left for a political—not a judicial—forum. Thus, Plaintiff does not have standing to raise this claim, and this Court does not have jurisdiction to hear it.

Even if the Court did have jurisdiction, it would dismiss this claim. A referendum is at the core of democratic values. *New Progressive Party,* 779 F.Supp. at 660. It is an "obligation of government" that the ballot be "balanced, impartial and neutral to the contestants." *Id.* The options should be clearly identified and free of confusion. *Id.* Unfairness or confusion in a ballot can implicate due process concerns. *Burton v. Georgia,* 953 F.2d 1266, 1269 (11th Cir.1992); *Griffin v. Burns,* 570 F.2d 1065, 1077 (1st Cir.1978) ("If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated"). In the present case, however, Plaintiff has not pointed to any patent or fundamental unfairness that shocks the conscience or otherwise rises to the level of a substantive due process violation.

3. *Claims that the referendum is a violation of federal law and public policy and that it includes ballot options outside the scope of Puerto Rico's powers regarding its relation with the United States*

Plaintiff also claims that the referendum is a violation of federal law and public policy and that it includes ballot options which are outside the scope of Puerto Rico's powers vis-à-vis its relation with the United States. The Court's discussion above in part 2. regarding the substantive due process claim is equally applicable to these claims. These claims are also ones for abstract injuries. They do not make allegations of particularized injuries. Even if, as Plaintiff complains, the ballot is confusing, constitutes log-rolling, is biased against the Navy, or is intended to influence the federal referendum, these shortcomings are not sufficient to give him standing. These are merely generalized grievances, and Plaintiff therefore does not have standing to raise them. The Court does not have jurisdiction to consider them.

Furthermore, even if he did have standing, these alleged shortcomings do not rise to the level of constitutional concerns. Thus these allegations fail to state a claim for which relief could be granted. Additionally, Plaintiff's allegations regarding these perceived shortcomings are further weakened by the fact that, as Defendants acknowledge, this referendum is not binding. *See New Progressive Party,* 779 F.Supp. at 662; *Barbosa,* 293 F.Supp. at 833. By contrast, the outcome of the federal referendum will have binding consequences on the Navy. *See* Pub.L. No. 106–398, §§ 1503—1505.

4. *First Amendment claims*

Lastly Plaintiff asserts violations of First Amendment rights. The prayer for relief in his complaint mentions the right to free speech, the right to assembly, and the right to petition the government. Law 34 in no way affects Plaintiff's own freedom to exercise these rights. Plaintiff does claim that he has third-party

standing to raise these claims on behalf of other voters in Puerto Rico. Generally, a plaintiff has standing only to bring claims for his own rights and interests, and not for the rights and interests of third parties. *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984) (quoting *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205). There are, however, three limited exceptions to this rule. The first two exceptions overlap. They exist when the third party is unlikely to be able to sue on his own behalf and when there is a special or close relationship between the plaintiff and the third party. *See Powers v. Ohio*, 499 U.S. 400, 410–11, 111 S.Ct. 1364, 1370–71, 113 L.Ed.2d 411 (1991); *Singleton v. Wulff*, 428 U.S. 106, 114–16, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976); *Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 106 (1st Cir.1995); Chemerinsky, *Federal Jurisdiction* § 2.3.4, at 83–87. Plaintiff does not allude to them, and they are not applicable here.

The third exception is available in First Amendment cases involving laws that have been so broadly drafted as to create a chilling effect that inhibits third parties from engaging in constitutionally protected speech. In cases where this "overbreadth" doctrine is invoked, a plaintiff may have standing to bring claims on behalf of those individuals whose rights have been chilled by the allegedly overbroad statute. *Munson*, 467 U.S. at 956–57, 104 S.Ct. at 2847; *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 798–99, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984). In his complaint, Plaintiff does not argue that Law 34 is unconstitutional because it violates the overbreadth doctrine and he makes no allegation regarding a chilling effect on third parties. At the hearing, he did assert that overbreadth was one of the grounds by which he was challenging the law. Other than mention the word "overbreadth," however, he gave no explanation as to how this law was overbroad or how it could have a chilling effect on third parties. Thus, this third exception is similarly inapplicable to Plaintiff's argument that he has third-party standing.[7] Absent standing, the Court lacks jurisdiction to hear Plaintiff's First Amendment claims.[8]

## 5. Conclusion

Based on all of the above, Plaintiff has not prevailed on the merits. The only claim for which he has standing is his claim that he was unconstitutionally denied the right to vote. As discussed above, this claim is without merit. He lacks standing to bring the remaining claims. Thus, the Court lacks jurisdiction to hear them. Accordingly, the request for a permanent injunction is denied, and the Court dis-

---

7. In his complaint, Plaintiff also claims that he has third-party standing to raise Fifth and Fourteenth Amendment rights of other voters. He has not shown that he has a special relationship with these voters or that they are somehow unable to bring claims themselves. And the third exception allowing for third-party standing is applicable only to First Amendment cases under the overbreadth doctrine. Thus, Plaintiff lacks third-party standing to raise these other claims.

8. Even if Plaintiff did have standing to raise these claims, the Court would deny them be-

cause they do not state a claim for which relief could be granted. Law 34 in no way limits the ability of voters to exercise their rights to free expression, to petition the government, or to assemble. A voter does not have an absolute right to vote in any manner that he so desires. *Burdick v. Takushi*, 504 U.S. 428, 433–42, 112 S.Ct. 2059, 2063–67, 119 L.Ed.2d 245 (1992). The fact that the ballot options do not comport with an option that Plaintiff may favor does not constitute a constitutional violation. *See New Progressive Party*, 779 F.Supp. at 662.

misses his claims regarding the local referendum.

The Court shall enter final partial judgment dismissing these claims. The Court is aware that the First Circuit generally disfavors partial judgments and the piecemeal appeals that they often engender. *See Nichols v. Cadle Co.,* 101 F.3d 1448, 1449 (1st Cir.1996). For the following reasons, the Court finds that a partial judgment is warranted. First, the present opinion and order disposes of all of Plaintiff's claims against the Puerto Rico Government defendants. *See Credit Francais Int'l, S.A. v. Bio–Vita, Ltd.,* 78 F.3d 698, 706 (1st Cir.1996) (The initial inquiry is whether the trial court's action underlying the partial judgment disposes of "all the rights and liabilities of at least one party as to at least one claim."). Second, there is no overlap or interrelationship between the dismissed claims and the still-pending claims. The dismissed claims dealt with a referendum to be held by the Puerto Rico Government. The pending claims deal with a referendum authorized by Congress. The viability of one set of claims has no bearing on the viability of the other. Thus, the Court's holding on the constitutionality of the local referendum has no effect on the constitutionality of the federal referendum. Similarly, the Court's resolution of Plaintiff's claims regarding the federal referendum will in no way alter the analysis in the present opinion on the local referendum claims. Although both referenda deal with Navy exercises in Vieques, the rights asserted by Plaintiff as to each referendum are separate and distinct.

Third, the equities and efficiencies of this case favor piecemeal disposal of the case. The local referendum is scheduled to take place July 29, one month from now. Thus, for any appeal, time is of the essence. If the Court were to refrain from issuing a final judgment until after the claims regarding the federal referendum have been resolved, the time for an appeal on the local referendum issue would be shortened and Plaintiff's right to appeal would be prejudiced. There is no reason why this right should be denied merely because the Court has yet to resolve the federal referendum claims, which are distinct from the local referendum claims. Accordingly, the Court finds that there is no just reason for delay in entering a partial judgment dismissing Plaintiff's local referendum claims.

WHEREFORE, Plaintiff's claims for injunctive relief enjoining the referendum authorized by Law 34 is hereby denied. Partial judgment shall be entered accordingly.

**IT IS SO ORDERED.**